IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
8/18/2017
U.S. DISTRICT COURT
Northern District of WV

DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff,

vs.

LIVEFREE EMERGENCY RESPONSE, INC. d/b/a LIFE BEACON and MMHTC MEDWATCH LIMITED, d/b/a MEDWATCH USA,

        Defendant.

Case No. 5:17-cv-131 (Stamp)

## CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff Diana Mey brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telephone practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Defendants LiveFree Emergency Response, Inc., d/b/a Life Beacon ("Livefree"), and MMHTC Medwatch Limited, d/b/a Medwatch USA ("Medwatch"), acting jointly, placed a computer-dialed telephone call to Ms. Mey's cellular telephone without her prior express consent.

3. At all relevant times, Ms. Mey's cell phone was listed on the national Do Not Call Registry.

4. Ms. Mey never consented to receive the call.

5. Because the call was transmitted using technology capable of generating hundreds of thousands of random calls per day, and because telemarketing campaigns generally involve calls to hundreds of thousands or even millions of potential customers *en masse*, Ms. Mey brings this action on behalf of a proposed nationwide class of other persons who received illegal telephone calls from the defendants.

6. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telephone activity, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7. Plaintiff Diana Mey is a resident of the State of West Virginia, and this District.

8. Defendant LiveFree is corporation based in Idaho with a principal office located at 901 Pier View Drive, Suite 206, Idaho Falls, Idaho 83402.

9. Defendant Medwatch is a corporation with principal place of business located at 37 West 47th Street, Suite 201, New York, NY 10036.

**Jurisdiction & Venue**

10. The Court has federal question jurisdiction over these TCPA claims. *Mims*, 132 S. Ct. at 740.

11. Venue is proper pursuant to 28 U.S. Code § 1391(b)(2) because a substantial part of the events giving rise to the claim, namely the illegal telephone call that is the basis of Ms. Mey's claim, occurred in this district.

**TCPA Background**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telephone calling industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. The TCPA's most stringent restrictions pertain to computer-generated telephone calls placed to cell phones.

14. The TCPA categorically bans persons and entities from initiating telephone calls using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service.  See 47 C.F.R. § 64.1200(a)(1)(iii); see also 47 U.S.C. § 227(b)(1).

15. The TCPA creates a private cause of action for persons who receive calls in violation of these provisions.  See 47 U.S.C. §§ 227(b)(3)(c).

16. A seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

17. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

18. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

19. In that ruling, the FCC instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

20. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

21. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*See* FCC Rcd at 6592 (¶ 46).

22. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Factual Allegations

23. On March 22, 2017, the Plaintiff received a computer-generated autodialed call from Medwatch promoting goods and services offered by both Medwatch and LiveFree.

24. When Ms. Mey answered the call, there was a noticeable delay.

25. After a several second pause, the call was answered by a sales representative who informed Ms. Mey that his name was "Chris."

26. "Chris" informed Ms. Mey that her phone number had been "nominated" by Medwatch to "get a free medical alert system."

27. Specifically, "Chris" offered Ms. Mey a medical pendant that can be worn around the neck and used to summon help in the event of an emergency.

28. "Chris" told Ms. Mey that the pendant was manufactured by LiveFree.

29. "Chris" then informed Ms. Mey that the "free" pendant that she had been "nominated" for could only be used if she paid a "monitoring" fee.

30. The entity that would purportedly "monitor" the pendant was Medwatch.

31. Upon information and belief, LiveFree and Medwatch have a contractual relationship whereby LiveFree sells the equipment to Medwatch, who markets the equipment via telemarketing.

32. Upon information and belief, Medwatch is also authorized to use LiveFree's trade name and trade mark when marketing LiveFree's goods and services.

33. The call was made to the Plaintiff's cellular telephone, 304-242-XXXX, which has been on the National Do Not Call List for a number of years.

34. The number displayed on the Plaintiff's caller ID was 262-244-8838.

35. In order to identify the parties behind the call in question, Ms. Mey feigned interest in purchasing the product.

36. Only after Ms. Mey indicated an interest in making a sale did "Chris" admit that his name was actually Deacon Frost.

37. Ms. Mey has no relationship with any of the Defendants and did not consent to receive the call at issue.

## Class Action Allegations

38. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

39. The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons in the United States who, within four years prior to the filing of this action, who were called on their cell phones by the Defendants or on Defendants' behalf, via a device with the capacity to dial numbers without human intervention, and where Defendants' records fail to indicate prior express written consent from the recipient to make such call.

40. The class is identifiable through phone records and phone number databases.

41. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

42. Plaintiff is a member of the class.

6

43. There are questions of law and fact common to Plaintiff and to the proposed class, including: (a) whether Medwatch used an automatic telephone dialing system to call telephone numbers assigned to cellular telephone service in an effort to promote goods and services of Medwatch and LiveFree; (b) whether the Defendants obtained prior express written consent from recipients before making such calls; (c) whether LiveFree is vicariously liable for telemarketing calls made on its behalf by Medwatch; and (d) whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

44. Plaintiff's claims are typical of the claims of class members.

45. Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

46. The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

47. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

48. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

49. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions prohibiting autodialer calls to cell phones.

50. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

51. The Defendants violated the TCPA by initiating a telephone call using an automated dialing system to Plaintiff's telephone numbers assigned to a cellular telephone service without her prior express consent. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

52. LiveFree is vicariously liable for the actions of Medwatch.

53. The Defendants' violations were negligent and/or knowing.

### Count Two:
### Injunctive relief.

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The TCPA authorizes injunctive relief to prevent further violations of the TCPA.

56. The Plaintiff respectfully petitions this Court to order the Defendants, and their employees, agents and independent distributors, to immediately cease engaging in unsolicited telephone calls in violation of the TCPA.

## Relief Sought

For herself and all class members, Plaintiff requests the following relief:

1. That the Defendants be restrained from engaging in future violations of the TCPA.

2.	That the Defendants and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

3.	That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure.

4.	That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5.	That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

/s/ John W. Barrett
John W. Barrett (WVSB #7289)
Jonathan R. Marshall (WVSB#10580)
Ryan McCune Donovan (WVSB #11660)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
rodonovan@baileyglasser.com